[903 NE2d 1163, 875 NYS2d 842]

In the Matter of COUNTY OF ERIE et al., Appellants, v STATE OF NEW YORK PUBLIC EMPLOYMENT RELATIONS BOARD et al., Respondents.

Argued January 13, 2009; decided February 19, 2009

## POINTS OF COUNSEL

*Jaeckle Fleischmann & Mugel, LLP,* Buffalo (*Sean P. Beiter* and *Elizabeth Fox-Solomon* of counsel), for appellants. I. The Correction Law preempts a public employer's duty to bargain regarding the classification and assignment of inmates to housing in local correctional facilities. (*Matter of Union Free School Dist. No. 2 of Town of Cheektowaga v Nyquist,* 38 NY2d 137; *Matter of Schenectady Police Benevolent Assn. v New York State Pub. Empl. Relations Bd.,* 85 NY2d 480; *Matter of Cohoes City School Dist. v Cohoes Teachers Assn.,* 40 NY2d 774; *Matter of Patrolmen's Benevolent Assn. of City of N.Y., Inc. v New York State Pub. Empl. Relations Bd.,* 6 NY3d 563; *Matter of Board of Educ. of City School Dist. of City of N.Y. v New York State Pub. Empl. Relations Bd.,* 75 NY2d 660; *Matter of Newark Val. Cent. School Dist. v Public Empl. Relations Bd.,* 83 NY2d 315; *Matter of Johnson v Joy,* 48 NY2d 689; *Matter of Howard v Wyman,* 28 NY2d 434.) II. The classification and assignment of inmates to housing is committed to the sole discretion of the Erie County Sheriff and is not a mandatory subject of bargaining. (*Matter of City of Watertown v State of N.Y. Pub. Empl. Relations Bd.,* 95 NY2d 73; *Matter of Board of Educ. of City School Dist. of City of N.Y. v New York State Pub. Empl. Relations Bd.,* 75 NY2d 660; *Matter of Webster Cent. School Dist. v Public Empl. Relations Bd. of State of N.Y.,* 75 NY2d 619.) III. The Erie County Sheriff's decision to implement a new inmate classification system pursuant to directives of the State Commission of Correction is a fundamental policy decision over which the Sheriff is not required to bargain. (*Matter of Board of Educ. of City School*

*Dist. of City of N.Y. v New York State Pub. Empl. Relations Bd.,* 75 NY2d 660; *Matter of West Irondequoit Teachers Assn. v Helsby,* 35 NY2d 46; *Matter of Lippman v Public Empl. Relations Bd.,* 296 AD2d 199, 99 NY2d 503.)

*David P. Quinn,* Albany, for State of New York Public Employment Relations Board and another, respondents. I. Appellants misstate the effect of the Public Employment Relations Board's decision and order, and misapprehend their bargaining obligations under the Taylor Law. II. The Public Employment Relations Board's determination was not affected by an error of law, arbitrary, capricious or an abuse of discretion. (*Matter of Incorporated Vil. of Lynbrook v New York State Pub. Empl. Relations Bd.,* 48 NY2d 398; *Matter of Board of Educ. of City School Dist. of City of N.Y. v New York State Pub. Empl. Relations Bd.,* 75 NY2d 660; *Matter of West Irondequoit Teachers Assn. v Helsby,* 35 NY2d 46; *Matter of Patrolmen's Benevolent Assn. of City of N.Y., Inc. v New York State Pub. Empl. Relations Bd.,* 6 NY3d 563; *Board of Educ. for City School Dist. of City of Buffalo v Buffalo Teachers Fedn.,* 89 NY2d 370; *Association of Surrogates & Supreme Ct. Reporters within City of N.Y. v State of New York,* 78 NY2d 143; *Matter of Cohoes City School Dist. v Cohoes Teachers Assn.,* 40 NY2d 774; *Matter of City of Watertown v State of N.Y. Pub. Empl. Relations Bd.,* 95 NY2d 73; *Matter of Newark Val. Cent. School Dist. v Public Empl. Relations Bd.,* 83 NY2d 315; *Matter of Schenectady Police Benevolent Assn. v New York State Pub. Empl. Relations Bd.,* 85 NY2d 480.) III. The Appellate Division properly ordered the Public Employment Relations Board's remedial order enforced. (*Matter of New York City Tr. Auth. [New York State Pub. Empl. Relations Bd.],* 154 AD2d 680; *Matter of State of N.Y. Dept. of Correctional Servs. v Kinsella,* 220 AD2d 19.)

*Ellen M. Mitchell,* Albany, and *Nancy E. Hoffman* for Civil Service Employees Association, Inc., Local 1000, AFSCME, AFL-CIO, Erie County Unit of Local 815, and another, respondents. I. The Public Employment Relations Board's order should be granted deference and confirmed as no conflict between statutes exists. (*Matter of Incorporated Vil. of Lynbrook v New York State Pub. Empl. Relations Bd.,* 48 NY2d 398; *Matter of Board of Educ. of City School Dist. of City of N.Y. v New York State Pub. Empl. Relations Bd.,* 75 NY2d 660; *Matter of Schenectady Police Benevolent Assn. v New York State Pub. Empl. Relations Bd.,* 85 NY2d 480.) II. The Correction Law does not preempt the Civil Service Law mandate to negotiate the transfer of union bargain-

ing unit work as the Correction Law is silent as to the guarding of prisoners. (*Matter of City of Watertown v State of N.Y. Pub. Empl. Relations Bd.,* 95 NY2d 73; *Matter of Board of Educ. of City School Dist. of City of N.Y. v New York State Pub. Empl. Relations Bd.,* 75 NY2d 660; *Matter of Union Free School Dist. No. 2 of Town of Cheektowaga v Nyquist,* 38 NY2d 137; *Matter of Patrolmen's Benevolent Assn. of City of N.Y., Inc. v New York State Pub. Empl. Relations Bd.,* 6 NY3d 563; *Matter of Cohoes City School Dist. v Cohoes Teachers Assn.,* 40 NY2d 774.)

*Reden & O'Donnell, LLP,* Buffalo (*Robert J. Reden* and *Terry M. Sugrue* of counsel), for Teamsters Local 264 of International Brotherhood of Teamsters, Warehousemen, and Chauffeurs, and another, respondents. I. The Public Employment Relations Board has the authority to find Taylor Law violations and grant appropriate remedies. (*Matter of Incorporated Vil. of Lynbrook v New York State Pub. Empl. Relations Bd.,* 48 NY2d 398; *Matter of Hewlett-Woodmere Union Free School Dist. v New York State Pub. Empl. Relations Bd.,* 232 AD2d 560; *Matter of Saratoga Springs City School Dist. [New York State Pub. Empl. Relations Bd.],* 68 AD2d 202, 47 NY2d 711; *Matter of New York City Tr. Auth. v New York State Pub. Empl. Relations Bd.,* 251 AD2d 583, 92 NY2d 819.) II. The standard of review of a Public Employment Relations Board (PERB) decision is very limited; PERB's construction of the Taylor Law must be confirmed unless irrational. (*Matter of Board of Educ. of City School Dist. of City of N.Y. v New York State Pub. Empl. Relations Bd.,* 75 NY2d 660; *Matter of Incorporated Vil. of Lynbrook v New York State Pub. Empl. Relations Bd.,* 48 NY2d 398; *Board of Educ. for City School Dist. of City of Buffalo v Buffalo Teachers Fedn.,* 89 NY2d 370; *Association of Surrogates & Supreme Ct. Reporters within City of N.Y. v State of New York,* 78 NY2d 143; *Matter of Cohoes City School Dist. v Cohoes Teachers Assn.,* 40 NY2d 774; *Matter of City of Watertown v State of N.Y. Pub. Empl. Relations Bd.,* 95 NY2d 73.) III. The Public Employment Relations Board's order imposes no duty other than the statutory duty to bargain a decision to subcontract exclusive bargaining unit work. (*Matter of Hearst Corp. v Clyne,* 50 NY2d 707.) IV. The Correction Law does not preempt negotiations regarding the transfer of exclusive bargaining unit work. (*Matter of Newark Val. Cent. School Dist. v Public Empl. Relations Bd.,* 83 NY2d 315.) V. Public policy underlying the Correction Law does not preclude negotiations regarding the transfer of exclusive bargaining unit work. (*Matter of Patrolmen's Benevolent Assn. of City of N.Y., Inc. v New York State Pub. Empl. Relations Bd.,* 6 NY3d 563;

*Matter of Cohoes City School Dist. v Cohoes Teachers Assn.,* 40 NY2d 774.) VI. Whether the classification and assignment of inmates is a mandatory subject of negotiations is immaterial to the Public Employment Relations Board's decision and order. VII. The decision to transfer guarding responsibilities does not constitute a fundamental policy decision implementing the Erie County Sheriff's mission to classify and house inmates. (*Matter of West Irondequoit Teachers Assn. v Helsby,* 35 NY2d 46; *Matter of Civil Serv. Empls. Assn., Local 1000, AFSCME, AFL-CIO, Orange County Local 836, City of Newburgh Unit v New York State Pub. Empl. Relations Bd.,* 273 AD2d 626; *Matter of State of N.Y. Dept. of Correctional Servs. v Kinsella,* 220 AD2d 19.)

### OPINION OF THE COURT

PIGOTT, J.

Respondents Civil Service Employees Association, Inc., Local 1000, AFSCME, AFL-CIO, Erie County Unit of Local 815 (CSEA) and Teamsters Local 264 of International Brotherhood of Teamsters, Warehousemen, and Chauffeurs (Teamsters) filed improper practice charges against petitioners County of Erie and Erie County Sheriff for allegedly transferring exclusive bargaining unit work to nonunit employees in violation of Civil Service Law § 209-a (1) (d), which provides that "[i]t shall be an improper practice for a public employer or its agents deliberately . . . to refuse to negotiate in good faith with the duly recognized or certified representatives of its public employees."

Petitioners argue on this appeal that the Appellate Division's confirmation of the determination made by the New York State Public Employment Relations Board (PERB) that petitioners committed an improper employment practice should be reversed. We agree.

I.

CSEA is the authorized collective bargaining representative for correction officers exclusively charged with guarding sentenced inmates incarcerated at the Erie County Correctional Facility. Teamsters is the authorized collective bargaining representative of deputy sheriffs who are exclusively charged with guarding presentenced and pretrial detainees (collectively referred to as unsentenced inmates) housed at the Erie County Holding Center and the "Annex," a space adjoining the Correctional Facility which holds the overflow of inmates from the Holding Center. Petitioners do not dispute that correction offi-

cers and deputy sheriffs have exclusively guarded sentenced and unsentenced inmates, respectively, since 1995.

In August 2000, the Erie County Legislature voted to transfer control of the Correctional Facility from the Erie County Executive to the Erie County Sheriff, a measure county residents approved in a referendum, leaving the Sheriff in control of both detention facilities. The guarding duties of correction officers and deputy sheriffs remained unchanged.

In early 2002, the Sheriff notified the unions that, due to this change in mission, it was necessary to implement a new classification system for the housing of inmates. The Sheriff initially prepared a unified classification plan that assigned housing based on risk without consideration of adjudication status, resulting in the commingling of sentenced and unsentenced inmates, but later withdrew that plan after resistance from the unions. In its place, the Sheriff implemented separate classification systems for the Correctional Facility and the Holding Center in order to maintain the separation of sentenced and unsentenced inmates.

Subsequently, the State Commission of Correction conducted an evaluation of the Holding Center and cited the Sheriff for overcrowding at that facility while the Correctional Facility had vacancies. The Commission found that the cause of the overcrowding was the Sheriff's failure to use a unified classification system for both facilities. In order to alleviate the overcrowding, the Commission directed the Sheriff to utilize the criteria set forth in Correction Law § 500-b (7) (a) and (b) and 9 NYCRR part 7013. In response, the Sheriff promulgated a single classification instrument that resulted in the commingling of sentenced with unsentenced inmates at both facilities, and correction officers and deputy sheriffs being assigned to guard both.

The unions thereafter filed improper practice charges alleging that petitioners violated Civil Service Law § 209-a (1) (d) by unilaterally transferring exclusive bargaining unit work to non-unit employees. The charges were consolidated and, after a hearing, an Administrative Law Judge ruled in favor of the unions and ordered that petitioners cease and desist in the assignment of sentenced inmates to the deputy sheriffs and the assignment of unsentenced inmates to correction officers. After the ALJ's decision was affirmed by PERB, petitioners commenced this CPLR article 78 proceeding, challenging as

arbitrary and capricious PERB's determination that their change in mission defense was inapplicable.

Supreme Court transferred the matter to the Appellate Division which confirmed PERB's determination, dismissed the petition and granted the unions' counterclaims seeking enforcement of the decision (43 AD3d 1311 [2007], *lv granted* 10 NY3d 708 [2008]). We now reverse and grant the petition.

## II.

A public employer's decisions are not bargainable as terms and conditions of employment where "they are inherently and fundamentally policy decisions relating to the primary mission of the . . . employer" (*Matter of Board of Educ. of City School Dist. of City of N.Y. v New York State Pub. Empl. Relations Bd.*, 75 NY2d 660, 669 [1990], citing *Matter of West Irondequoit Teachers Assn. v Helsby*, 35 NY2d 46 [1974]). Although such policy decisions are exempt from bargaining, the *impact* of those decisions is not (*see West Irondequoit Teachers Assn.*, 35 NY2d at 51; *see also Matter of Levitt v Board of Collective Bargaining of City of N.Y., Off. of Collective Bargaining*, 79 NY2d 120, 127 [1992]).

In *West Irondequoit Teachers Assn.* (35 NY2d 46 [1974]), this court upheld a PERB determination that found the fixing of class size not to be a term or condition of employment (and therefore not negotiable), but rather a matter of educational policy. That fact alone, however, did not preclude the teachers' association from bargaining over the impact of the policy on the teachers' working conditions (*id.* at 49-50). Although we concluded in that case that PERB "articulated a rational basis for its determination in the [school board's] favor" (*id.* at 52), the same cannot be said, in this instance, about PERB's determination that the Sheriff was required to first negotiate with the unions before implementing a classification policy satisfactory to the Commission.

Correction Law § 500-b directs that the Sheriff "shall exercise good judgment and discretion" and "take all reasonable steps to ensure that the assignment of persons" to housing units "fosters the safety, security and good order of the jail" while concomitantly ensuring that necessary precautions are made for the safety and welfare of those in custody (Correction Law § 500-b [7] [a] [1]-[2]; *see* 9 NYCRR 7013.1, 7013.2). As part of those responsibilities, the Sheriff is charged with "implement-[ing] and maintain[ing] a formal and objective system for the

consistent classification of all inmates" (9 NYCRR 7013.1), requiring "a procedure for determining an inmate's appropriate housing assignment which utilizes a point scale, decision tree or other method capable of quantifiable analysis or computation" (9 NYCRR 7013.2 [b]). Factors that the Sheriff must consider include, among other things, criminal history, prior escapes, mental/medical illness, history of hostile relationships with other inmates, and any other information the Sheriff deems necessary to ensure inmate safety (*see* Correction Law § 500-b [7] [b]; 9 NYCRR 7013.8 [c]). Significantly, none of those factors takes into account the adjudication status of the inmate or the allocation of work among collective bargaining units.

Given the statutory requirement that the Sheriff implement and maintain a formal and objective classification system, we conclude that PERB's determination that petitioners committed an improper practice by unilaterally transferring unit work to nonunit employees is not entitled to deference (*see Matter of Newark Val. Cent. School Dist. v Public Empl. Relations Bd.*, 83 NY2d 315, 320 [1994], citing *Matter of Rosen v Public Empl. Relations Bd.*, 72 NY2d 42, 47-48 [1988]). Once having implemented such a system, the impact of that decision, if any, upon the contracts between the parties is subject to bargaining (*see Matter of City School Dist. of City of New Rochelle [New Rochelle Fedn. of Teachers, Local #280, AFT, AFL-CIO]*, 4 PERB ¶ 3060 [1971]; *see also West Irondequoit Teachers Assn.*, 35 NY2d at 49-50; *Matter of Amalgamated Tr. Union, Local 1342 [Niagara Frontier Tr. Metro Sys., Inc.]*, 36 PERB ¶ 3036 [2003]).

Accordingly, the judgment of the Appellate Division should be reversed, with costs, the petition granted, the August 9, 2006 determination of PERB annulled and the counterclaims for enforcement of PERB's determination dismissed.

Judges CIPARICK, GRAFFEO, READ, SMITH and JONES concur; Chief Judge LIPPMAN taking no part.

Judgment reversed, etc.