■ In the Matter of HAMPTON BAYS UNION FREE SCHOOL DISTRICT, Petitioner, v PUBLIC EMPLOYMENT RELATIONS BOARD et al., Respondents. [878 NYS2d 485]—

McCarthy, J. Proceeding pursuant to CPLR article 78 (transferred to this Court by order of the Supreme Court, entered in Albany County) to review a determination of respondent Public Employment Relations Board which found that petitioner had committed an improper employer practice.

Respondent Hampton Bays Teachers' Association, NYSUT, AFT, AFL-CIO (hereinafter Association) filed an improper practice charge against petitioner pursuant to Civil Service Law § 209-a (1) (a) and (d) after petitioner refused to furnish documentation underlying its termination of a probationary physical education teacher before her probationary period expired. The purpose for the requested documents was to ascertain if petitioner acted in an arbitrary, capricious or discriminatory manner in terminating the teacher in violation of the collective bargaining agreement between them. Following a hearing, an Administrative Law Judge found that petitioner did commit an improper practice when it failed to provide the requested material and directed it to do so. On administrative appeal, respondent Public Employment Relations Board (hereinafter PERB) agreed, prompting this CPLR article 78 proceeding which has been transferred to this Court (see CPLR 7804 [g]).

We begin by noting that "[o]ur review power is limited to whether PERB's decision is supported by substantial evidence, which turns on whether there exists a rational basis in the record to support the findings upon which the agency's determination is predicated" (*Matter of Syracuse Police Benevolent Assn. v New York State Pub. Empl. Relations Bd.*, 24 AD3d 913, 914-915 [2005] [internal quotation marks and citations omitted]; *see Matter of Sliker v New York State Pub. Empl. Relations Bd.*, 42

AD3d 653, 653 [2007]; *Matter of Hoey v New York State Pub. Empl. Relations Bd.*, 284 AD2d 633, 634 [2001]). Upon our review of the record, we are satisfied that PERB's determination is so supported. The record reveals that the teacher was hired effective September 1, 2004 for a probationary period ending on October 31, 2006 and that she received positive evaluations throughout 2004 and 2005. On April 5, 2006, however, she was advised that she was being suspended without pay for accompanying an underage student to a bar where the student consumed alcohol in her presence. She was separately notified on the same day that she was also being recommended for termination. The Association's grievance chairperson immediately intervened on the teacher's behalf at which time he discovered that two of the teacher's colleagues had recently been interviewed "by administration" and were asked about the teacher's sexual orientation. He further discovered that the subject underage student denied the stated grounds for the teacher's suspension and recommended termination, that is, the student denied that the teacher accompanied her to a bar or observed her drinking.[1]

These circumstances raised concerns that the suspension and recommended termination were for discriminatory reasons (i.e., the teacher's sexual orientation) thus prompting requests for information underlying the recommendation and a request for "written accounts" about the teacher that might reasonably be construed as negative. The grievance chairperson made clear that these materials were being sought to permit the Association to investigate a potential grievance under the collective bargaining agreement. The requests were denied and, ultimately, the teacher's probationary appointment was terminated effective June 8, 2006.

Article XII (A) (1) of the parties' collective bargaining agreement pertains to probationary teachers and sets forth general guidelines concerning the period of employment, annual evaluations and tenure decisions. The provisions of article XII (A) (1) "are not subject to the Grievance or Arbitration Procedure, *except if the [Association] feels that [petitioner] acted capriciously, arbitrarily, or discriminatorily*; and in such event, the [Association's] rights shall be limited only to the Grievance Procedure" (Professional Negotiations Agreement art XII [A] [2] [emphasis added]). Here, in requesting documentation concerning the teacher's termination, the Association was clearly invok-

---

1. The record contains an affidavit from this student denying the central allegations outlined in the April 5, 2006 letter and averring that the allegations of wrongdoing against the teacher were "untrue."

ing this exception. Thus, and contrary to petitioner's claim, the Association had a legitimate contractual basis for the information.[2]

This being the case, we note that the failure to provide an employee organization with information relevant and material to the investigation or prosecution of a potential grievance constitutes an improper practice (*see Matter of Civil Serv. Empls. Assn. v New York State Pub. Empl. Relations Bd.*, 46 AD3d 1037, 1038 [2007]; *Matter of County of Erie v State of New York*, 14 AD3d 14, 18 [2004]; *Matter of Schuyler-Chemung-Tioga Educ. Assn. [Schuyler-Chemung-Tioga Bd. of Coop. Educ. Servs.]*, 34 PERB ¶ 3019 [2001]; *Matter of Greenburgh No. 11 Fedn. of Teachers [Greenburgh No. 11 Union Free School Dist.]*, 33 PERB ¶ 3059 [2000]; *Matter of Rochester Police Locust Club, Inc. [City of Rochester]*, 29 PERB ¶ 3070 [1996]; *Matter of New York State Pub. Empls. Fedn., AFL-CIO [State of New York (Dept. of Health & Roswell Mem. Inst.)]*, 26 PERB ¶ 3072 [1993]). Under the circumstances here, substantial evidence supports PERB's finding that the Association's requests were reasonable, relevant and necessary to its investigation of a potential grievance on behalf of the teacher and that petitioner violated Civil Service Law § 209-a (1) (a) and (d) by refusing to comply with the requests.

Petitioner argues that it took action against the teacher under Education Law § 3031 and therefore it had no statutory obligation to produce information concerning her termination, citing *Emma v Schenectady City School Dist.* (28 F Supp 2d 711 [1998], *affd* 199 F3d 1322 [1999]), *Matter of Orangetown Policemen's Benevolent Assn. (Town of Orangetown)* (39 PERB ¶ 3012 [2006]) and *Matter of Ulster County Sheriff's Empls. Assn. (County of Ulster)* (26 PERB ¶ 3008 [1993]). This argument misses the mark. The Association is not asserting rights under Education Law § 3031; rather, it is asserting rights under the collective bargaining agreement which, as outlined, prohibits petitioner from conducting itself in an arbitrary, capricious or discriminatory manner with respect to probationary teachers and which permits a grievance on that basis. Significantly, the Court of Appeals has clearly held that a school district, through collective bargaining, "may legally agree . . . to limit or to forego its right to discharge a probationary teacher during the

---

2. In its determination, PERB agreed with an unsolicited finding of the Administrative Law Judge that article XII (A) (1) contains a typographical error. PERB, however, did not rely on this alleged error in ruling that the Association was entitled to relief. Thus, petitioner's extended arguments surrounding PERB's stated agreement about this alleged error are unpersuasive.

period of probation" (*Matter of Cohoes City School Dist. v Cohoes Teachers Assn.*, 40 NY2d 774, 777 [1976]; *accord Matter of Vestal Cent. School Dist. [Vestal Teachers Assn.]*, 2 AD3d 1190, 1192 n 3 [2003], *lv denied* 2 NY3d 708 [2004]; *Matter of Averback v Board of Educ. of New Paltz Cent. School Dist.*, 147 AD2d 152, 153-154 [1989], *lv denied* 74 NY2d 611 [1989]; *Matter of Board of Educ., Carle Place Union Free School Dist. [Carle Place Teachers Assn.]*, 63 AD2d 714 [1978]). Here, there is indeed a contractual limitation on petitioner's evaluation and termination of a probationary teacher during the period of probation.

Petitioner's remaining contentions have been reviewed and found to be without merit, particularly its claim that federal law prohibited disclosure here. With respect to this latter issue, PERB rationally concluded that the documents at issue were not "education records" prohibited from release within the meaning of the Family Educational Rights and Privacy Act of 1974 (20 USC § 1232g). In our view, *teacher* disciplinary records and/or records pertaining to allegations of teacher misconduct cannot be equated with *student* disciplinary records (*compare United States v Miami Univ.*, 294 F3d 797, 812 [2002]) and do not contain "information directly related to a student" (20 USC § 1232g [a] [4] [A] [i]) such that disclosure is proscribed under this statutory scheme (*see e.g. Klein Ind. School Dist. v Mattox*, 830 F2d 576, 578-580 [1987], *cert denied* 485 US 1008 [1988]; *Ellis v Cleveland Mun. School Dist.*, 309 F Supp 2d 1019, 1022-1023 [2004]; *School Comm. of Boston v Boston Teachers Union*, 71 Mass App Ct 1121, 885 NE2d 173 [2008] [*lv denied* 451 Mass 1109, 889 NE2d 435 (2008)], *affg* 2006 WL 4125023, 2006 Mass Super LEXIS 634 [Super Ct, Suffolk County, Nov. 30, 2006, Brassard, J.]; *Brouillet v Cowles Pub. Co.*, 114 Wash 2d 788, 800-801, 791 P2d 526, 533 [1990]; *see generally Staub v East Greenbush School Dist. No. 1*, 128 Misc 2d 935, 935-936 [1985]).

Finally, we conclude that PERB's counterclaim for enforcement of its remedial order is proper (*see* Civil Service Law § 213 [a]).

Cardona, P.J., Peters, Lahtinen and Kane, JJ., concur. Adjudged that the determination is confirmed, without costs, petition dismissed and the application for enforcement granted.